**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Case No. 21-cr-00155-PAB

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. TERRELL ADAMS,
a/k/a "Terrell Marceles Adams,"
a/k/a "Terrell Marcellus Adams,"
a/k/a "Tyrese Henderson,"

Defendant.

---

# PLEA AGREEMENT

---

The United States of America (the government), by and through Jena R. Neuscheler, Assistant United States Attorney, and the defendant, Terrell Adams, personally and by counsel, David Johnson, Assistant Federal Public Defender, hereby submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1. This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

## I. AGREEMENT

### A. Defendant's Plea of Guilty:

The defendant agrees to (1) plead guilty to Count 1 of the Indictment, charging a violation of 18 U.S.C. § 922(g), possession of a firearm and ammunition by a previously



COURT EXHIBIT
1
21-CR-00155-AB

convicted felon; (2) waive certain appellate and collateral attack rights, as explained in detail below; and (3) agree not to contest forfeiture, as more fully described below.

**B. Government's Obligations:**

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(B). The government agrees to recommend a sentence at the low end of the advisory guideline range as finally calculated by the Court. The parties understand that this agreement is not binding on the Court. The government further agrees that the defendant should receive a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). If the defendant does not engage in prohibited conduct or otherwise implicate U.S.S.G. § 3C1.1, the government agrees to file a motion requesting that the defendant receive a one-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b). In addition, the government agrees not to object to the defendant's request that any sentence of incarceration imposed in this case run concurrent with any sentence that may be imposed in connection with (1) the defendant's parole revocation in Weld County Case No. 2017CR2069, or (2) the defendant's pending state cases in Denver District Court Case Nos. 2021CR1836 and 2020CR5668.

**C. Defendant's Waiver of Appeal**

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in

connection with this prosecution, conviction, or sentence (including any restitution order), unless it meets one of the following criteria:

(1) the sentence exceeds the maximum penalty provided in the statute of conviction, 18 U.S.C. § 922(g);

(2) the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 23; or

(3) the government appeals the sentence imposed.

If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including any restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

(1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

(2) the defendant was deprived of the effective assistance of counsel; or

(3) the defendant was prejudiced by prosecutorial misconduct.

**D. Forfeiture of Assets**

The defendant admits the forfeiture allegations contained in the Indictment. The defendant further agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant, the defendant's nominees, or elsewhere. The assets to be

forfeited specifically include, but are not limited to: (1) a Diamondback Firearms, model DB9, 9mm semi-automatic pistol, bearing serial number YI1620; and (2) all recovered ammunition. The defendant agrees and consents to the forfeiture of the firearm and ammunition identified above pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant understands that pursuant to 18 U.S.C. § 983, the seizing agency is required to send notice in non-judicial civil forfeiture matters. Having been advised of said rights regarding notice, the defendant hereby knowingly and voluntarily waives his rights to notice being sent within the time frames in 18 U.S.C. § 983 and to having the property returned to him if notice is not sent within the prescribed time frames. The defendant further agrees to the forfeiture of any substitute assets up to the value of any property described above pursuant to 21 U.S.C. § 853(p) and Federal Rules of Criminal Procedure 32.2(e).

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

## II. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offense of possession of a firearm and ammunition by a previously convicted felon are as follows:

**Count One: 18 U.S.C. § 922(g)**

*First*: The defendant knowingly possessed a firearm and ammunition;

*Second*: The defendant was convicted of a felony, that is, a crime punishable by imprisonment for a term exceeding one year, before he possessed the firearm and

ammunition;

*Third*: At the time he possessed the firearm and ammunition, the defendant knew that he had been convicted of such an offense; and

*Fourth*: Before the defendant possessed the firearm and ammunition, the firearm and ammunition had moved at some time from one state to another.

## III. STATUTORY PENALTIES

The maximum penalties for a violation of Count 1 of the Indictment are: not more than 10 years of imprisonment, not more than a $250,000 fine, or both imprisonment and a fine; not more than 3 years of supervised release; and a $100 special assessment fee.

## IV. COLLATERAL CONSEQUENCES

This felony conviction may cause the loss of civil rights including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

## V. STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree the government would be able to prove the following facts at trial:

On April 25, 2020, Aurora Police Department (APD) officers responded to a report of an armed robbery at a bus stop located at the intersection of East Colfax Avenue and North Billings Street in Aurora, Colorado. Officers contacted victim I.O. and witness W.H., who stated that I.O. was robbed while attempting to purchase marijuana from two black male suspects. I.O. and W.H. explained that when I.O. tendered $50 to pay for the marijuana, the black male suspect wearing a white hooded sweatshirt lifted up his shirt to reveal a firearm tucked into his waistband, took the $50 from I.O., and fled without providing any marijuana. I.O. and W.H. stated that the two male suspects fled in the direction of a nearby McDonalds.

Officers contacted the two male suspects shortly after they exited a nearby McDonalds. Officers identified one suspect as Terrell Adams. Mr. Adams was wearing a white hooded sweatshirt. Inside Mr. Adams' pants, officers recovered a semi-automatic Diamondback Firearms model DB9, 9mm semi-automatic pistol, bearing serial number YI1620. Officers also recovered two $20 bills and one $10 bill in Mr. Adams' pants pocket. Mr. Adams was interviewed by APD officers on April 25, 2020. Prior to that interview, officers advised Mr. Adams of his *Miranda* rights. During the interview,

Mr. Adams admitted that the $50 in his pants pocket belonged to I.O. and agreed to return the money to I.O.

The Diamondback pistol recovered from Mr. Adams had one bullet in the chamber and four rounds in the magazine. The Diamondback pistol and all associated ammunition were not manufactured in the state of Colorado and therefore must have crossed state lines prior to Mr. Adams possessing the items on April 25, 2020. Law enforcement officers determined that the Diamondback pistol recovered from Mr. Adams on April 25, 2020 was previously reported stolen. When officers attempted to test fire the Diamondback pistol, they determined that it could not be fired due to a loose recoil spring and recoil guide. Special Agent Jonathan Dennis of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") examined the Diamondback pistol recovered from Mr. Adams and concluded that it qualifies as a "firearm," as that term is defined in Title 18, United States Code, Section 921(a)(3), insofar as the Diamondback pistol is designed to expel a projectile by the action of an explosive, and may also be readily converted to expel a projectile by the action of an explosive if the recoil guide, spring hat, and recoil guide head are replaced.

Prior to April 25, 2020, Mr. Adams had been convicted of an offense punishable by imprisonment for a term exceeding one year. On April 25, 2020, Mr. Adams knew that he had been convicted of an offense punishable by imprisonment for a term exceeding one year.

## VI. ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed

by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. The parties understand that the government has an independent obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may argue that facts identified in the presentence report, or otherwise identified during the sentencing process, affect the estimate below.

A. Base offense level:

i. The government believes the base offense level is **20** because the defendant committed the offense subsequent to sustaining one felony conviction for a crime of violence, namely, felony menacing with a real or simulated weapon, in violation of C.R.S. § 18-3-206(1)(a), (b). U.S.S.G. § 2K2.1(a)(4)(A).

ii. The defendant believes the base offense level is **14** because he was a prohibited person at the time he committed the instant offense. U.S.S.G. § 2K2.1(a)(6)(A).

B. Specific offense characteristics:

i. There is a **two-level** increase because the firearm was stolen. U.S.S.G. § 2K2.1(b)(4)(A).

ii. There is a **four-level** increase because the defendant possessed a firearm in connection with another felony offense. U.S.S.G. § 2K2.1(b)(6)(B).

C. Adjustments: There are no victim-related, role-in-offense, obstruction, and/or multiple count adjustments.

D. Adjusted offense level:

i. The government believes the adjusted offense level is **26**.

ii. The defendant believes the adjusted offense level is **20**.

E. Acceptance of responsibility: The defendant should receive a 3-level adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

i. Under the government's calculation, the resulting total offense level would be **23**.

ii. Under the defendant's calculation, the resulting total offense level would be **17**.

F. Criminal History Category: The parties understand that the defendant's criminal history computation is tentative and based on the defendant's prior convictions. Based on the information available at this time, the parties believe the defendant is in criminal history category **VI**.

G. The career offender/criminal livelihood adjustments do not apply.

H. Imprisonment:

i. The government believes the total offense level is **23** and the defendant is in criminal history category **VI**. The advisory guideline range resulting from these calculations is **92-115** months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level estimated above could conceivably result in a range from 46 months (bottom of Category I) to 115 months (top of Category VI). The guideline range would not exceed, in any case, the statutory maximum applicable to the count of conviction.

ii. The defendant believes the total offense level is **17** and the defendant is in criminal history category **VI**. The advisory guideline range resulting from these calculations is **51-63** months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level estimated above could conceivably result in a range from 24 months (bottom of Category I) to 63 months (top of Category VI). The guideline range would not exceed, in any case, the statutory maximum applicable to the count of conviction.

I. Fine:

i. Under the government's estimated offense level of 23, the fine range for this offense would be $20,000 to $200,000, plus applicable interest and

penalties. U.S.S.G. § 5E1.2.

ii. Under the defendant's estimated offense level of 17, the fine range for this offense would be $10,000 to $95,000, plus applicable interest and penalties. U.S.S.G. § 5E1.2.

J. Supervised Release: Pursuant to § 5D1.2, if the Court imposes a term of supervised release, that term shall be at least 1 year but not more than 3 years.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII. ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

Date: 10/6/21

Terrell Adams
Defendant

Date: 10/6/21

David Johnson
Attorney for Defendant

Date: 10/15/21

for Jena Neuscheler, AUSA
Assistant United States Attorney