IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 21-cr-00155-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

TERRELL ADAMS,
     *a/k/a Terrell Marceles Adams,*
     *a/k/a Terrell Marcellus Adams,*
     *a/k/a Tyrese Henderson,*

      Defendant.

---

## OBJECTIONS AND RESPONSES TO PRESENTENCE REPORT

---

The defendant, Terrell Adams ("Mr. Adams"), by and through undersigned counsel, hereby files the below Objections and Responses to the Presentence Report (Doc. 29) ("PSR"):

Paragraph 17 (gang affiliation): Mr. Adams objects to the assertion that he "is a known active gang member, specifically, the Rolling 60's Crips."  Mr. Adams states that he is not a member of any gang; he has no gang affiliation.

Paragraphs 22, 28, 32, 90 (Base Offense Level; Guideline Range): In the Plea Agreement, Mr. Adams asserted that he should be assessed Base Offense Level 14 due to felony menacing not being categorized as a crime of violence. *See* Doc. 26 at 8 (Part VI A.ii.). Mr. Adams maintains that position at sentencing.  Specifically, Mr. Adams argues that his prior conviction for felony menacing, *see* PSR at ¶ 37, did not require "the use, attempted use, or threatened use of physical force against the person of

another," as that phrase has been interpreted for the purposes of Guideline Sections 2K2.1 and 4B1.2. Therefore, Mr. Adams objects to the PSR's Base Offense Level calculation. *See* PSR at ¶ 22. If felony menacing were not considered a "crime of violence", the adjusted total offense level would be 20, PSR at ¶ 28, and the correct total offense level would be 17, *id*. at ¶ 32.  The correct resulting advisory guideline range would be **51 to 63 months** (not 92 to 115 months). *See id*. at ¶ 90.

Mr. Adams' position in the Plea Agreement was formed prior to the Tenth Circuit's most recent review of this issue.  *See United States v. Lozado*, No. 20-1420, 2021 WL 4901656 (10th Cir. Oct. 21, 2021) ("[Defendant] submits[] Colorado felony menacing cannot support a sentencing enhancement under U.S.S.G. § 2K2.1(a)(2)."). In that case, the Circuit affirmed this Court's holding that a defendant's prior conviction for Colorado felony menacing is categorically a crime of violence. *Id*. at *2-3. To the extent Mr. Adams may have a right to appeal his sentence in this case, *but see* Doc. 26 at 2-3 (Part I.C.), he preserves the issue for further review.

Paragraph 47 (father's last name):  The PSR states that Ms. Taylor asserted that Mr. Adams' father's last name was "Adams".  Mr. Adams responds by making clear that he has always been told his father's last name was "Yaeger".

Paragraphs 51, 55 and pages R-3, R-4 (age when he left residence):  The PSR states that Mr. Adams was 15 when he left the foster care's residence, and asserts he has been "transient since age 15."  Mr. Adams corrects that he was 16 years old when he left the residence and has been transient since that age.

Paragraphs 57, 83 (releases and financial forms):  The PSR states that the Probation Office did not receive medical release forms from Mr. Adams, nor did it

receive the three financial-related disclosure documents. PSR at ¶¶ 57, 83. Because the PSR interview occurred over the phone, *see* PSR at ¶ 46, the forms were sent separately to Mr. Adams at his detention facility. However, Mr. Adams explains that he never received the forms for his completion.

### Page R-3 (Recommended Special Condition 5):

The PSR recommends that a special condition of supervised release be imposed such that, upon completing his BOP sentence, Mr. Adams reside in a halfway house or "residential reentry center (RRC) for a period of six months." PSR at R-3 (condition 5). Mr. Adams objects. The justification for the PSR's request is that Mr. Adams has been "transient" since he was a teenager and "was homeless prior to his arrest."  PSR at R-4. While those statements are correct (and therefore Mr. Adams understands the PSR's reasoning for recommending RRC placement), as explained further below he requests the special condition not be imposed at this time.

It is true that halfway house placement would assist Mr. Adams in establishing a residence. But the BOP itself will act to make sure that Mr. Adams does not release from its custody homeless. Therefore, the special condition is not necessary at this time.

Absent the PSR's recommended condition 5, the BOP will likely place Mr. Adams in a halfway house to serve the end of his BOP sentence. BOP policy explains: "CCCs, commonly referred to as 'halfway houses,' **provide suitable residence**, structured programs, job placement, and counseling, while the inmates' activities are closely monitored."  BOP Program Statement 7310.04(7)(a) (emphasis added). This Program Statement on halfway house placement (referred to as "Community Corrections Centers (CCCs)") generally states that "eligible inmates are to be released to the community

through a CCC."  *See* BOP Program Statement 7310.04(1).  "CCCs provide an excellent transitional environment for inmates nearing the end of their sentences. The level of structure and supervision assures accountability and program opportunities in employment counseling and placement, substance abuse, and daily life skills."  *Id*. "[I]nmates should generally be referred to CCCs to maximize the chances of successful reintegration into society."  *Id*.

Simply stated, the BOP will develop a release plan as Mr. Adams nears the end of his sentence, *see id*. at 7310.04(8) ("Release Plan"), and that release plan will likely involve him serving the end of his sentence in a halfway house.  As the program statement makes clear: "**All eligible inmates will have opportunities to participate in CCC programs to assist with their reintegration into the community, in accordance with their release needs**."  *See* BOP Program Statement 7310.04(2) (emphasis added).  *See also* 18 U.S.C. § 3624(c).[1]  While at the CCC, the PSR's goals of obtaining a residence can be achieved. The special condition is not necessary, and it would be premature for this Court to impose recommended special condition 5 at this time.

If this Court were to impose special condition 5, harm may result. Specifically, if this Court imposes a halfway house term as a condition of Mr. Adams' supervised

---

[1] The BOP is also statutorily required to ensure halfway house placement: "The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility." 18 U.S.C. § 3624(c).

release (as recommended in the PSR), it will likely eliminate or reduce the BOP's

placement of Mr. Adams in a halfway house.  As explained in the Program Statement:

> inmates who are required to spend a portion of time in a CCC
> as a condition of release (i.e. supervised release or court order)
> do not require an extended Bureau CCC placement. For
> example, if the Unit Team determines the inmate needs a six
> month CCC placement, but the inmate is required to stay in a
> CCC for 90 days as a condition of release, then the institution
> shall ordinarily refer the inmate for a 60-90 day CCC
> placement.

BOP Program Statement 7310.04(9)(a).  As applied here, by imposing recommended

special condition 5, this Court will affect the BOP's placement of Mr. Adams in a halfway

house at the end of his BOP sentence.

That should not be a desired outcome.  "The ultimate goal is to maximize each

eligible inmate's chances for successful release and a law-abiding life."  *Id.* at

7310.04(9)(a)(2).  Here, a six-month term in a halfway house as a condition of

supervised release (as recommended in the PSR) would frustrate, rather than further,

that BOP goal.  By imposing recommended special condition 5, Mr. Adams will be

prevented from beginning his transition into the community as a part of his BOP

sentence.  In essence, the only thing special condition 5 accomplishes is that it will

delay or eliminate Mr. Adams' BOP halfway house placement.  The recommended

condition will have the unintended consequence of Mr. Adams getting a later start on

the progress the PSR hopes to achieve in a halfway house.

Instead of the PSR's recommended special condition, the BOP should formulate

Mr. Adams' release plan and CCC placement without having to take into consideration

the recommended special condition 5.  If, at the end of Mr. Adams' BOP sentence, a

halfway house placement is necessary, this Court can and should easily impose the

special condition *at that time*. This Court should let the BOP release plan process play

out as it would in all cases, as detailed in BOP Program Statement 7310.04.  If a

halfway house placement continues to be necessary at the time Mr. Adams begins his

supervised release term, recommended special condition 5 can be added then.  As this

Court is aware, it is not unusual or difficult for this Court to add an additional condition of

supervised release at the end of a custodial sentence or at the beginning of a

supervisee's term.  If necessary, that is the course of action that should be followed

here.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


s/ David E. Johnson
DAVID E. JOHNSON
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
David_johnson@fd.org
Attorney for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2022, I filed the foregoing **Objections and Responses to Presentence Report** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Jena R. Neuscheler, Assistant United States Attorney
Email:  jena.neuscheler@usdoj.gov

Valeria Spencer, Assistant United States Attorney
Email:  valeria.spencer@usdoj.gov

Albert C. Buchman, Assistant United States Attorney
Email: al.buchman@usdoj.gov

I hereby certify that I have mailed or served the document or paper to the following participant in the manner (mail, hand-delivery, etc.) indicated next to the participant's name:

Terrell Adams (via U.S. mail)

s/ David E. Johnson
DAVID E. JOHNSON
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
David_johnson@fd.org
Attorney for Defendant

7