IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 21-cr-00155-PAB

UNITED STATES OF AMERICA,

        Plaintiff,

v.

TERRELL ADAMS,
    *a/k/a Terrell Marceles Adams,*
    *a/k/a Terrell Marcellus Adams,*
    *a/k/a Tyrese Henderson,*

        Defendant.

---

## MOTION FOR BELOW-GUIDELINE SENTENCE

The defendant, Terrell Adams ("Mr. Adams"), by and through undersigned counsel, hereby files this Motion for Below-Guideline Sentence, thereby requesting this Court sentence Mr. Adams to <u>60 months' imprisonment</u>, concurrent with Mr. Adams' undischarged state sentences, and in support thereof states as follows:

### INTRODUCTION

Mr. Adams is a 23-year-old young man whose life has been unstable, beginning as a child and continuing to his placement in foster care as a child. Having mental health issues throughout his life, beneficial medication has recently stabilized Mr. Adams' mental health status. The instant offense was committed in April 2020, involving him possessing an inoperable firearm. At the time, he was not medicated. The longest imprisonment sentence that had been imposed on him at that time was 2 years DOC. *See* Doc. 29 ("PSR") at ¶ 37. After the instant offense, but prior to him going on

medication, he committed three additional offenses, totaling seven criminal points. *See* PSR at ¶¶ 39-41. Mr. Adams is in federal court via writ. *See* Doc. 7; *see also* PSR at pages 2-3 ("Release Status"). At the time of sentencing in this case, Mr. Adams is currently serving three undischarged imprisonment sentences, including the longest sentence previously imposed on him: 2 ½ years DOC. *See* PSR at ¶¶ 37, 40, 41. He has been in continuous custody since September 26, 2020, none of which time prior to sentencing in this case time will be credited towards his federal sentence. PSR at 2-3.

Under the unique facts and circumstances of this case, this Court should impose a sentence of 60 months imprisonment, concurrent to his undischarged state sentences. The Presentence Report ("PSR") agrees that a concurrent, below-guideline sentence is warranted. *See* PSR at ¶ 104 & page R-1 n.1. Specifically, the PSR calculates an advisory guideline range of 92 to 115 months. PSR at ¶ 90. Although Mr. Adams has preserved the issue of whether he has a prior conviction for a "crime of violence," *see* Doc. 30, he recognizes this Court is likely to agree with the PSR's calculation. Nevertheless, the PSR recommends a below-Guideline sentence of 80 months, concurrent to his undischarged state sentences. PSR at R-1. However, even that sentence would be greater than necessary.

The guideline is merely advisory, *United States v. Booker*, 543 U.S. 220 (2005), and the range of sentencing options is broad. *See, e.g., Spears v. United States*, 555 U.S. 261 (2009); *Gall v. United States*, 552 U.S. 38 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007); *Rita v. United States*, 551 U.S. 338 (2007). This Court may not presume that a within-Guideline sentence is appropriate, *id*. at 351, nor may it put its "thumb on the scales" in favor of a Guideline sentence, *Kimbrough*, 552 U.S. at 113

(Scalia, J., concurring). A district court must "give respectful consideration to the Guidelines" but is permitted "to tailor the sentence in light of other statutory concerns as well." *Kimbrough*, 552 U.S. at 101 (internal quotations omitted). As it relates to Mr. Adams' undischarged terms of imprisonment, *see* PSR at ¶¶ 37, 40, 41, the Guidelines explain that "the sentence for the instant offense may be imposed to run concurrently, partially concurrently or consecutively to [those sentences] to achieve a reasonable punishment for the instant offense." U.S.S.G § 5G1.3(d).

This Court must engage in an "individualized assessment" of Mr. Adams and his case "based on the facts presented." *Gall*, 552 U.S. at 50. This Court is free to categorically disagree with the Guidelines and may impose a different sentence based upon a contrary view of what is appropriate under Section 3553(a). This includes the freedom to merely disagree with a guideline's computations, and the "policy decisions" of the current guideline. *Pepper v. United States*, 131 S. Ct. 1229, 1241 (2011).

## ARGUMENT

The Guidelines do not take into account several unique aspects of this case. Taken together, these circumstances warrant a below-Guideline sentence – one that is further below the Guideline range than that recommended by the PSR. Specifically, after considering the Section 3553(a) factors, this Court should impose a sentence of 60 months imprisonment, concurrent to Mr. Adams' undischarged state sentences.[1]

[1] As recommended and specified in the PSR, it is requested that the instant offense's sentence run concurrent to the sentences imposed in Weld County District Court, Case Number 17CR2609, and Denver County District Court, Case Numbers 20CR5668 and 21CR1836. *See* PSR at R-1.

Although the PSR's recommendation contemplates a below-Guideline sentence, it is still greater than necessary to satisfy the purposes of Section 3553(a).

First, the instant offense involved an inoperable firearm. According to the report of the officer who recovered the firearm: "The handgun appeared to have something wrong with it. The receiver came out of the front when I took custody of it."  As explained in the PSR: "The firearm was later found to be inoperable due to a loose recoil spring and recoil guide." PSR at ¶ 13.  In order for the gun to become operable, "the recoil guide, spring hat, and recoil guide head" needed to be "replaced."  *Id*. at ¶ 10 (quoting the Plea Agreement). Operable firearms are clearly more dangerous for a felon to possess than inoperable ones. However, the Guidelines do not distinguish between them. Here, having possessed an inoperable firearm, the seriousness of Mr. Adams' offense is mitigated.

Second, Mr. Adams was cooperative and forthcoming with law enforcement about the firearm. When law enforcement first located Mr. Adams, he and a friend were inside a McDonalds. Law enforcement first made contact with Mr. Adams outside the McDonalds. According to discovery, "they were detained without incident." Mr. Adams then told law enforcement about the firearm in his possession.  According to discovery, after Mr. Adams was ordered to the ground, "he stated he did have a gun on him and it was in his waistband. The handgun actually fell down into the crouch of the jeans. [The officer] was able to secure the handgun."

Mr. Adams was read his *Miranda* rights and agreed to speak with law enforcement. He explained that he got the firearm from a friend. Mr. Adams further admitted that the $50 found on his person belonged to I.O., the victim reporting party.

4

*See* PSR at ¶ 9. Mr. Adams "agreed to return the money to I.O." *Id*. Contrary to Mr. Adams, the victim was described in police reports as "extremely uncooperative". Mr. Adams' being forthcoming with law enforcement about the firearm and his honesty regarding the victim's money are considerations that, in part, merit a below-Guideline sentence.

Third, although Mr. Adams did possess the inoperable firearm during the instant case, he does not have a history of possessing firearms. In fact, Mr. Adams is not alleged to have possessed a firearm in any of his numerous prior convictions. One of those prior convictions is for felony menacing, *see* PSR at ¶ 37, which caused the PSR to increase Mr. Adams' base offense level by six levels, *id*. at ¶ 22. In most felony menacing cases, a firearm is involved. But not so in Mr. Adams' prior conviction, where it appears the prior offense's element of "deadly weapon" was a "chair" that Mr. Adams had only smacked in an aggressive manner. *See* PSR at ¶ 37. In short, the instant offense was "the first time [Mr. Adams] was in possession of a firearm during a criminal activity." PSR at R-3. A within-Guideline sentence is not necessary to deter Mr. Adams from further firearm possession.

Fourth, the requested 60-month sentence would be the longest imprisonment term ever imposed on Mr. Adams, by far. At the time Mr. Adams committed the instant offense, the longest imprisonment term imposed on him had been 2 years DOC. While awaiting sentencing in the instant case, two new imprisonment terms have been imposed on him, for 2 years and 2 ½ years DOC. *See* PSR at ¶¶ 40, 41; *see also id*. at pages 2-3 ("Release Status"). Given that history, a guideline sentence would be significantly longer than necessary to comply with Section 3553(a). Similarly, the PSR

points out that its recommended 80-month sentence "is more than three times the length of any other sentence [Mr. Adams] has served." *Id*. at R-3. For a person who, at the time of the offense, had never had a sentence longer than 2 years imposed, a 60-month sentence for the instant offense imposes significant punishment.

Fifth, this is especially true for a Defendant with Mr. Adams' upbringing and age. Mr. Adams committed the instant offense a few months past his 21st birthday. Although an adult, Mr. Adams' upbringing was not conducive to regular development. In short, at age 21, Mr. Adams had significant maturing to do. *See Roper v. Simmons*, 543 U.S. 551, 574 (2005) (the "qualities that distinguish juveniles from adults do not disappear when an individual turns 18."). Mr. Adams was the youngest of eight children. PSR at ¶ 48. Growing up, his parents "were addicted to 'crack' cocaine." *Id*. at ¶ 50. Mr. Adams described to the PSR author living in hotels as a child. He explained that both of his parents were drug dealers; he recalled his father taking him to panhandle for money to support the family. *Id*. He also experienced abuse. *See* PSR at ¶ 53.

In school, Mr. Adams was in special education classes; he had to repeat the third grade. *Id*. at ¶ 78. At age 8, Mr. Adams' mother passed away, and Mr. Adams was placed in foster care. He was adopted at age 11 by a foster family, but he left the house at age 16. From age 16 onward, Mr. Adams "lived on the streets." PSR at ¶ 51. At the time of the instant offense, Mr. Adams had no stable residence and was transient on the streets. It was this unstable upbringing that culminated in Mr. Adams committing the instant offense, and other offenses, as a young man aged 21. "[S]cientific and sociological studies . . . tend to confirm, [a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more

6

understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions." *Simmons*, 543 U.S.at 569. This was certainly true of Mr. Adams.  Mr. Adams had "less control, or less experience with control, over [his] own environment." *Id*. It is well-established that "parts of the brain involved in behavior control continue to mature through late adolescence." *Graham v. Florida*, 130 S.Ct. 2011, 2026 (2010). As explained by experts in this field:

> Scientists have found that adolescents as a group, **even at later stages of adolescence**, are more likely than adults to engage in risky, impulsive, and sensation-seeking behavior. This is, in part, because they overvalue short-term benefits and rewards, are less capable of controlling their impulses, and are more easily distracted from their goals. Adolescents are also more emotionally volatile and susceptible to stress and peer influences.

Br. for the American Medical Assoc. & The American Academy of Child and Adolescent Psychiatry as *Amici Curiae* at 2, Graham v. Florida, 130 S.Ct. 2011, 2026 (2010) (08-7412, 08-7621). *See also* Br. for the American Psychological Assoc, et al., Graham, *id*. (08-7412, 08-7621).  Here, a guideline sentence (or even the PSR's recommended sentence of 80 months) would be unduly harsh when taking into account Mr. Adams' age and his associated upbringing.

Sixth, Mr. Adams also has significant mental health conditions that, unlike before, are now under control. *See generally* PSR at ¶¶ 58-65.  At the time of the instant offense, Mr. Adams was not receiving treatment for his mental health.  Mr. Adams has now been in custody since September 26, 2020.  While in custody on his state cases, he underwent a mental health evaluation. Records from the Denver Sheriff Health Services report how "Mr. Adams has been seemingly compliant in taking his medications, and his symptoms appear to have improved." *Id*. at ¶ 63. The evaluating

doctor commented that Mr. Adams' prognosis appeared to be positive with continuing mental health treatment. *Id*. at ¶ 64.

Similarly, Mr. Adams has continued his medication compliance while at the FDC in this case.  Mr. Adams has been prescribed medication "and he finds them to be effective."  PSR at ¶ 60. He expressed similar sentiments while in state custody: "[Mr. Adams] expressed a desire to continue taking psychotropic medications."  *Id*. at ¶ 65. The PSR summarized how Mr. Adams' mental health issues "have recently stabilized due to prolonged use of psychotropic medications while incarcerated." PSR at R-3. Mr. Adams also explained to the PSR author that he was amenable to mental health treatment: "It's always beneficial to talk to someone," he commented. In fact, Mr. Adams has expressed his desire to serve his imprisonment sentence in a facility that offers mental health treatment.  He requests such a designation.

Seventh and finally, Mr. Adams has worked to improve himself while in custody. Since arriving at FDC in July 2021, he had only one minor no disciplinary incident for failing to stand for count, in July 2021, less than two weeks after he arrived. PSR at ¶ 4. Since then, he has not had any disciplinary sanctions. "He is not a management concern." *Id*. Further, Mr. Adams has been participating in any programming that has been offered (albeit limited while in presentence confinement during the pandemic). For example, in September 2021, he earned an Adult Continuing Education Program Certificate of Completion. *See* Doc. 29-2.

## CONCLUSION

In conclusion, imprisoning a young man like Mr. Adams, who has never served more than 2 years imprisonment and who has recently stabilized his mental health, for

80 or 92 months will do more harm than good. Section 3553(a) will be thwarted under those sentences. A sentence of either 80 months (as recommended by the PSR) or 92 months (the bottom of the guideline range) is greater than necessary to comply with Section 3553(a). Instead, a 60-month sentence for possessing an inoperable firearm that Mr. Adams was honest about best complies with Section 3553(a).  Finally, any imprisonment sentence in this case should be imposed concurrent to Mr. Adams' undischarged state sentences, as that would accomplish a reasonable punishment for the instant offense.[2]

WHEREFORE, this Court should impose a sentence of <u>60 months</u> imprisonment, <u>concurrent</u> to his undischarged state sentences, as detailed in footnote 1 *supra*.  After considering the history and characteristics of Mr. Adams and the nature and circumstance of this case, that is the most appropriate sentence. 18 U.S.C. § 3553(a)(1). Such a sentence is sufficient but not greater than necessary (A) to reflect

---

[2] Assuming Mr. Adams obtains the maximum amount of federal "good time" reduction, the requested 60-month concurrent sentence would result in Mr. Adams discharging his federal imprisonment sentence approximately 52 months after February 18, 2022, *i.e.* in approximately June 2026, when Mr. Adams will be 27 years old. Mr. Adams would not get any credit towards his federal sentence for the 16 ½ month time-period from September 26, 2020 to February 18, 2022. *See* PSR at page 2-3 ("Release Status").  However, he would begin to get credit towards his federal sentence beginning on February 18, 2022, until his 60-month imprisonment sentence is discharged.

In short, assuming the maximum good-time reduction, the requested 60-month concurrent sentence in this case would result in Mr. Adams being in continuous custody for **a total of almost 69 months** (from September 26, 2020 to June 2026). Such a sentence "achieve[s] a reasonable punishment for the instant offense."  U.S.S.G § 5G1.3(d).

Under the PSR's recommendation, Mr. Adams will discharge his federal sentence (assuming maximum "good time" credit) 69 months after February 18, 2022, *i.e.* in November 2027, when Mr. Adams will be a month shy of 29 years old. In short, the PSR's requested 80-month concurrent sentence would result in Mr. Adams being in continuous custody for **a total of almost 86 months** (from September 26, 2020 to November 2027).  That recommendation is greater than necessary.

the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). Such a sentence would also adequately take into consideration "the kinds of sentences available," the advisory guideline range, as well as the Guideline's policy statements. 18 U.S.C. § 3553(a)(3), (4), (5). Finally, such a sentence would not be an unwarranted disparity, § 3553(a)(6), given the unique facts of this case and characteristics of Mr. Adams.

        Respectfully submitted,

        VIRGINIA L. GRADY
        Federal Public Defender


        s/ David E. Johnson
        DAVID E. JOHNSON
        Assistant Federal Public Defender
        633 17th Street, Suite 1000
        Denver, CO  80202
        Telephone:  (303) 294-7002
        FAX:  (303) 294-1192
        David_johnson@fd.org
        Attorney for Defendant

CERTIFICATE OF SERVICE

    I hereby certify that on February 4, 2022, I filed the foregoing **MOTION FOR BELOW-GUIDELINE SENTENCE** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Jena R. Neuscheler, Assistant United States Attorney
Email: jena.neuscheler@usdoj.gov

Valeria Spencer, Assistant United States Attorney
Email: valeria.spencer@usdoj.gov

    I hereby certify that I have mailed or served the document or paper to the following participant in the manner (mail, hand-delivery, etc.) indicated next to the participant's name:

Terrell Adams (via U.S. mail)

                                  s/ David E, Johnson
                                  DAVID E. JOHNSON
                                  Assistant Federal Public Defender
                                  633 17th Street, Suite 1000
                                  Denver, CO  80202
                                  Telephone:  (303) 294-7002
                                  FAX:  (303) 294-1192
                                  David_johnson@fd.org
                                  Attorney for Defendant